## STATE OF VERMONT

## ENVIRONMENTAL COURT

Appeal of J.D. Associates    }
}
}     Docket No. 253-11-02 Vtec
}
}

<u>Decision and Order on Cross-Motions for Summary Judgment</u>

Appellant J.D. Associates appealed from a decision of the Development Review Board (DRB) of the Town of Morristown upholding a zoning permit issued to Appellee-Applicant Elizabeth Darden. Appellant is represented by Harold B. Stevens. Esq.; Appellee-Applicant Elizabeth Darden is represented by Thomas J. Amidon, Esq. and Thomas M. Higgins, Esq. The Town of Morristown has not entered an appearance in this matter. Appeals from the Morristown DRB are on the record.

The following facts are undisputed unless otherwise noted.

Appellant contested a permit application filed by the North Country Animal League (NCAL) to build and operate an animal shelter, with offices and meeting rooms, on the former Vartanian property of 2.1 acres located on Route 100 (Laporte Road). Appellant operates a golf course resort on nearby property and was concerned about effects of the NCAL proposal on its property, in particular regarding the noise from barking dogs. The NCAL permit application was granted, with conditions to minimize its effects on surrounding property, and in particular from barking dogs.

Appellee-Applicant owns the former Schillhammer property, a 10.1-acre parcel of property between the NCAL property and Appellant= s property, in the Rural Residential with Agricultural Use zoning district. The property is fenced but is otherwise undeveloped. Appellee-Applicant leases a portion of the property to another for use as a horse pasture. On the remaining portion of the property she goes for walks herself and trains and walks her own dogs. The parties have provided no information to the Court regarding whether Appellee-Applicant owns residential property or other property in the vicinity of the property in question. Before obtaining approval of its project on the former Vartanian property, NCAL had proposed its project for the former Schillhammer property; Appellant had vigorously opposed that proposal.

NCAL= s proposal of its project on the former Vartanian parcel included the location of its proposed septic system on the former Schillhammer parcel. The DRB= s first approval of NCAL= s conditional use permit, in April 1999, contained the condition that: A the only authorized use on the Schillhammer property is the septic system.@ Appellee-Applicant purchased the former Schillhammer property on July 5, 1999. On December 21, 1999, the DRB

approved NCAL= s amended application, which contained the condition that: A North Country Animal League animals shall not be on the former 10.1-acre Schillhammer property.@

On April 15, 2000, Appellee-Applicant granted NCAL a sewer easement for it to construct and maintain its septic system on her property.

On July 24, 2002, Appellee-Applicant applied for and was issued the zoning permit on appeal in the present case. It requested approval of a 100' x 100' fence and a 12' x 12' shed as an > accessory building.=

The two 1999 permits regarding the NCAL proposal only impose conditions on use by NCAL and its representatives of what is now Appellee-Applicant= s property. The only use of Appellee-Applicant= s property by NCAL is for NCAL= s septic system. NCAL is specifically precluded from placing or allowing any of its animals to be placed on Appellee-Applicant= s property. Even if Appellee-Applicant had been a party to NCAL= s permit applications, the conditions of the NCAL permits did not address any limitations regarding Appellee-Applicant= s property, other than NCAL= s proposed uses of it. Appellee-Applicant is bound by NCAL= s permit only in the sense that she may not assist or act as an agent of NCAL to violate those conditions by taking any of NCAL= s animals onto this particular parcel of land.

However, Appellee-Applicant is still subject to the Zoning Bylaws regarding her own use of her property. We must examine her application for a zoning permit for a 100' x 100' fence and a 12' x 12' shed in light of the Zoning Bylaws.

In the Rural Residential with Agricultural Use zoning district, a fence is a permitted use under ' 262(g), regardless of the purpose for which it is being erected, provided that it complies with ' 425.1 or is exempt under ' 425.3. As no party suggests that Appellee-Applicant= s property is a > working farm,= we presume that the fence was analyzed under ' 425.1. The record reflects that the fence is proposed as an open fence, but does not state the fence= s proposed height. If it meets the requirements of ' 425.1, it may be approved by the Zoning Administrator under ' 262(g), without regard to Appellee-Applicant= s intended purpose in erecting it. That is, approval of the fence only authorizes Appellee-Applicant to erect the fence. Any particular use she intends to make of the property would have to be analyzed independently as to whether it meets the Zoning Bylaws as a permitted use in this district, or whether it requires a conditional use permit (in which case it would have to go before the DRB for that purpose, and Appellant could argue for similar conditions to be imposed as those imposed on NCAL).

In the Rural Residential with Agricultural Use zoning district, an application to erect a shed may be considered in the category of a permitted accessory use under ' 262, but it can only be considered as an accessory use if it meets the definition of accessory use. The Zoning Bylaws define accessory use or structure as A a use or structure on the same lot with, and of a nature customarily incidental and subordinate to the principal use or structure.@ (Emphasis added.) Unlike many cases in which a proposal is accessory to an existing residential, agricultural or commercial use on the same lot, in the present case the record reflects that the principal use of the parcel is for the agricultural use of horse pasturage, and that the only other structure on the parcel is the fence for the horse pasturage use. Therefore, the shed could only be approved as an

accessory structure if it was used for the horse pasturage use, or to contain materials and tools for maintaining the fence on the property.

As Appellee-Applicant= s property has no dwelling on it, at the present time her use of the proposed shed could not qualify as a home occupation or a home business, or as an accessory to a residential use. The record does not reflect that the property is used for forestry. Thus the only permitted use to which the shed could be accessory would be the agricultural use of the property already discussed above. Any other use, for example for outdoor recreation or for a dog training service business, would fall in a conditional use category which would have to obtain a conditional use permit before the shed could be considered as accessory to it.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant= s Motion for Summary Judgment is GRANTED in PART and Appellee-Applicant= s Motion for Summary Judgment is DENIED in PART, in that, on the present record, the proposed shed does not qualify as an accessory use to any approved principal use of the lot. It is also hereby ORDERED and ADJUDGED that Appellant= s Motion for Summary Judgment is DENIED in PART and Appellee-Applicant= s Motion for Summary Judgment is GRANTED in PART, in that the NCAL permits only govern the use of Appellee-Applicant= s property by NCAL and its agents, successors and assigns, as discussed above. The zoning permit issued to Appellee-Applicant for the 100' x 100' fence is upheld, and the zoning permit issued to Appellee-Applicant for the 12' x 12' shed is vacated and denied, on the basis that it is not accessory to any approved principal use on the lot (that is, to any principal use either holding a zoning permit as a permitted use or holding a conditional use permit as a conditional use).

This decision concludes this appeal. Appellee-Applicant is free to apply to the DRB for any such approval of a principal use and any accessory uses in the future, in which proceedings Appellant may raise its concerns regarding the keeping or training of dogs on the property.

Done at Barre, Vermont, this 26th day of May, 2003.


_____
Merideth Wright
Environmental Judge